# CUNARD v. FLORIDA PAROLE AND PROBATION COMMISSION
## Case No. 84-3016
Second Judicial Circuit, Leon County

January 21, 1985

## APPEARANCES OF COUNSEL

**Kenneth G. Oertel** for petitioner.

**Doris E. Jenkins,** Florida Parole and Probation Commission, for respondent.

## OPINION OF THE COURT

P. KEVIN DAVEY, Circuit Judge.

This cause is before the Court on the Petition for Writ of Mandamus filed by Joseph Cunard, and transferred to this Court by virtue of the Order in *Cunard v. Parole and Probation Commission*, Case No. BC-206 So.2d (Fla. 1st DCA 1984) (September 28, 1984), and the Court having considered the Petition, the appendix and transcript of record filed therewith and the Response and Composite Exhibits filed by the

Respondent Florida Parole and Probation Commission, and the Court otherwise being fully advised finds as follows:

This Court has jurisdiction of this mandamus proceeding. *Hansen v. Florida Parole and Probation Commission*, 436 So.2d 349 (Fla. 1st DCA 1983). A Petition for Mandamus is the appropriate remedy to be sought by an inmate who challenges the extension of his Presumptive Parole Release Date (PPRD). *Pannier v. Wainwright*, 423 So.2d 533 (Fla. 5th DCA 1982); *Moore v. Florida Parole and Probation Commission*, 289 So.2d 719 (Fla. 1974).

Petitioner Cunard was convicted of second degree murder and sentenced to life in prison on September 5, 1978, (Comp. Ex. 1). On August 8, 1979, Respondent established Cunard's Recommended Presumptive Release Date as September 16, 1986 (Comp. Ex. 2). On or about September 21, 1978 the then Department of Offender Rehabilitation issued its Psychological Screening report (App. A). Included among the report's "psychological observations" or clinical findings is the statement "MMPI data suggested immaturity, self centered nature, difficulty for discrimination, and being somewhat gullible." Various other psychological characteristics or observations were noted in the report, however, the psychologist concluded in the Recommendations portion of the report that there was "[n]o psychological disturbance evident" in Mr. Cunard.

On August 26, 1981, the Respondent affirmed a Hearing Examiner Panel's Recommendation that Mr. Cunard's PPRD date be reduced from September 16, 1986 to September 11, 1984. (App. C). The rationale for this reduction is set forth in the Hearing Examiner's Biennial Interview worksheet (Comp. Ex. III); and was ostensibly based on highly favorable comments by a number of Respondent's employees who supervised or otherwise dealt with Petitioner during his incarceration (See App. D for one example). Thereafter, on two occasions after Early Effective Parole Release Date (EEPRD) interviews, Mr. Cunard was recommended by Respondent's staff for additional reductions of PPRD, however, Respondent Commission chose not to follow the recommendations and maintained his PPRD on September 11, 1984 (App. G, G-1 and H). Petitioner successfully completed a program of work release in Alachua County, and received a favorable report from the Department of Corrections' evaluation team which concurred with the recommendation of Respondent's Hearing Examiner of a July 10, 1984 parole release date (App. I).

On November 9, 1983 Respondent's parole case analyst sought from the Department of Corrections a Mental Health Status Report

(MHSR) on Petitioner. No report was forthcoming, and a second request was made on March 27, 1984 (Comp. Ex. V). This report was apparently transmitted on August 6, 1984 and received by the Respondent on August 17, 1984 (See Respondent's Response pp. 6-7). This MHSR provides the sole basis relied upon by the Respondent for extending Petitioner's PPRD 60 months on its review of September 5, 1984 (See App. N and Transcript of Record pp. 15-16).

This report arrives at a similar clinical diagnosis from the MMPI that was made in the Psychological Screening Report on intake, i.e. "no gross psychopathology," (App.J). The remainder of the report consists of a recapitulation of favorable comments and character traits which have been made about or ascribed to Mr. Cunard by employees of Respondent (and others) who have had contact with him; and some rather inconclusive statements and rhetorical musings about why Mr. Cunard committed the crime and why he doesn't wish to talk about the episode. The psychologists imply that their reason for questioning his release is that they cannot predict whether he might commit the same act again; however, they stated in Section B of their report that ". . . there are no recognized standards by either the American Psychiatric or Psychological Association to effectively [sic] predict potential for future assaultive behavior."

Once established, the PPRD becomes binding on the Respondent Commission, F.S. 947.172(3). With the exception of clerical errors, the Respondent may only extend or change the PPRD under the "narrowly circumscribed conditions" provided in the statutes. Those conditions are limited to reasons of institutional conduct, for good cause in exceptional circumstances, or the acquisition of new information not available at the time of the initial interview. *Bizzigotti v. Florida Parole and Probation Commission*, 410 So.2d 1360 (Fla. 1st DCA 1982); *Canter v. Florida Parole and Probation Commission*, 409 So.2d 227 (Fla. 1st DCA 1982). The only applicable basis for the Respondent's action herein was "new information" which the Respondent contends was supplied by the MHSR. Petitioner contends that the holding in *Wells v. Florida Parole and Probation Commission*, 437 So.2d 767 (Fla. 1st DCA 1983) is dispositive of this case. However, that case does not stand for the proposition that psychiatric reports may not be used by the Respondent Commission as a basis for extending a prisoner's PPRD. Unlike the situation in *Wells*, the psychological report (MHSR) in this case was definitely not in existence at the time of the initial establishment, as it was rendered on or about August 6, 1984.

If the MHSR in the instant case contained "new information not available at the time of initial interview," then this report could

54

provide the Commission the basis for extending Mr. Cunard's PPRD. While the MHSR is a "new report", it does not provide "new information", which is required by F.S. 947.16(4). See *Bizzigotti, supra* at 1362. The Commmission cannot change a PPRD on the rationale of "new information" where the information "has already been considered and acted upon by the Commission in establishing the PPRD." *State ex rel. Boyles v. Florida Parole and Probation Commission,* 436 So.2d 207 (Fla. 1st DCA 1983); *Jackson v. Florida Parole and Probation Commission,* 424 So.2d 930 (Fla. 1st DCA 1983).

The MHSR contains no solid or concrete conclusions that are new. Taken as a whole, the MHSR is a series of rhetorical questions and musings which appear to conclude that since Mr. Cunard (with no criminal history before the incident and a "model prisoner" history since) committed a serious crime how can we be sure he will *not* do so again? The psychologists provide the answer when they state that the professional associations have no recognized standards to predict potential for such behavior. If this was the applicable standard for parole, no inmate would ever attain eligibility.

Mr. Cunard's crime, the details surrounding it, and his history are all well known to the Respondent when it established and later reduced his PPRD. The MHSR merely dwells on and reiterates those matters without providing any new information which can reasonably form the basis for an extension of the PPRD. *Moats v. Florida Parole and Probation Commission,* 419 So.2d 775 (Fla. 1st DCA 1982). The only conclusive statements which may be gleaned from the report are that, "[E]xcluding the crime, there is no strong evidence to support any major conflicts or response to environmental stressors" and that since incarceration he "has responded very well to the immediate structure." These conclusions are favorable to Mr. Cunard and the issue of his release.

The Commission's order (App. N) extrapolates from the MHSR that Mr. Cunard's resocialization is questionable because of a "lack of clinical observation, exploration and treatment." However, the Court notes that Petitioner Cunard has been an inmate in the prison system for more than six years, has been observed clinically in work and other "real world" settings and has universally received outstanding reports and recommendations in connection with his motivation, adjustment, remorse, psychological state, etc. Had treatment or other "exploration" been necessary, either the intake psychologist or one of a number of correctional officers or other employees of the Respondent would have recommended such during his incarceration. The fact that Petitioner

55

has adjusted so well to his situation further belies the Commission's rationale for denying him release at this time.

There is nothing contained in the MHSR or the record which satisfied the statutory requirement for new information sufficient to give the Commission discretion to extend Petitioner Cunard's PPRD past September 11, 1984. It is therefore

ORDERED AND ADJUDGED that the Petition for Writ of Mandamus be and the same is hereby granted, and the Respondent Florida Parole and Probation Commission be and the same is hereby commanded, subject to reasonable and customary terms and conditions of parole, to release Petitioner Joseph Cunard immediately.